UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

MARK MINASI,

|                          | Plaintiff, | 6:10-cv-0975 |
|--------------------------|------------|--------------|

vs.

(NAM/DEP)

THE CITY OF UTICA, NEW YORK, GEORGE
DEANGELO, Individually and as a Police Officer for the
City of Utica, and MICHAEL HAUCK, Individually and
as a Police Officer for the City of Utica

Defendants.
_____

**APPEARANCES**:                          **OF COUNSEL**:

Office of Stephen L. Lockwood            Daniel N. Cafruny
285 Genesee Street
Utica, NY 13501
*Attorney for Plaintiff*

Office of the Corporation Counsel, City of Utica   John P. Orilio
One Kennedy Plaza
Utica, NY 13502
*Attorney for Defendants*

**Norman A. Mordue, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

**I.       INTRODUCTION**

Plaintiff and part-time taxicab driver Mark Minasi was arrested on August 16, 2009, by

defendant George DeAngelo of the City of Utica Police Department and convicted of two traffic

violations.  Based on the facts surrounding the arrest and convictions, defendant Michael Hauck

declined to renew Minasi's taxicab license on February 3, 2010.  Plaintiff sues DeAngelo, Hauck,

and the City of Utica under 42 U.S.C. § 1983 for violating his First, Fourth, Fifth, and Fourteenth

Amendment rights, and for conspiracy.  Plaintiff also invokes this Court's supplementary

jurisdiction under 28 U.S.C. § 1367(a) over New York tort claims against DeAngelo and the City

of Utica for assault, battery, false imprisonment, and intentional infliction of emotional distress.

Specifically, plaintiff asserts that DeAngelo made the arrest without probable cause, in retaliation

for plaintiff's exercise of a constitutional right or with the malicious or bad faith intent to injure

plaintiff, and that DeAngelo used excessive force in conducting the arrest.  Plaintiff further

asserts that DeAngelo, Hauck, and the City of Utica violated and conspired to violate plaintiff's

constitutional rights by declining to renew and thereafter suspending plaintiff's taxicab license in

retaliation for plaintiff having served a Notice of Claim regarding injuries sustained during the

arrest.  Plaintiff lastly asserts that the City of Utica is responsible for DeAngelo and Hauck's

individual violations by virtue of *respondeat superior*.

Defendants have moved for summary judgment dismissing the complaint under Federal

Rule of Civil Procedure 56 and Local Rule 7.1(a)(3).  Plaintiff has responded in accordance with

Local Rule 7.1(a)(3).

## II.    FACTUAL BACKGROUND

A.    The Arrest

At approximately 1:00 a.m. on August 16, 2009, plaintiff Minasi, a part-time taxicab

driver with Utica City Cab, was dispatched to Varick Street in the City of Utica, New York to

pick up a fare.  Plaintiff double-parked his cab across the street from the Sickenburger Bar on

Varick Street.  A woman approached plaintiff, identified herself as the fare, and asked plaintiff to

wait while she went back to the Sickenburger Bar to summon her friends.  Before she returned to

the cab, defendant DeAngelo pulled up behind plaintiff in a police vehicle and engaged his

emergency lights.

The parties dispute the facts leading up to the arrest.  Plaintiff alleges that he exited the cab and walked back to DeAngelo's car to explain that he had made contact with his fare, and that he was waiting for her to return from the Sickenburger Bar with her friends.  DeAngelo replied that he did not care and demanded that plaintiff move the cab.  Plaintiff responded by asking DeAngelo "why the cops were allowed to block traffic but taxicabs are not."

Plaintiff contends that his question was the primary motivation for his arrest and the subsequent non-renewal and suspension of his taxicab license.  According to plaintiff, DeAngelo became enraged at the question, shouting "Now you're getting fucking tickets!"  He then threw the police vehicle into park, exited, and demanded that plaintiff produce his registration.  When plaintiff handed over the registration, DeAngelo used more profanity and again demanded that plaintiff produce his registration.  The commotion attracted a significant crowd of onlookers from the nearby bars.

After other officers responded to the scene, DeAngelo declared that he was placing plaintiff under arrest.  Plaintiff turned and placed his hands behind his back.  According to plaintiff, DeAngelo then grabbed plaintiff's arm and forced plaintiff up onto the hood of a police vehicle so that his feet were no longer touching the ground, causing injury to plaintiff's head and chest. Without warning, DeAngelo then tugged and twisted plaintiff's arm into a "wrestling move" while applying handcuffs, causing injury to plaintiff's arm and wrist.  Plaintiff asserts that DeAngelo pulled plaintiff off the hood by the handcuff chain, causing further injury to plaintiff's wrist.  Plaintiff also observed DeAngelo make a menacing face as he overtightened the handcuffs, causing even more injury to plaintiff's wrist.  Plaintiff maintains that he was passive and

-3-

compliant throughout the arrest.

Defendants, on the other hand, contend that plaintiff was belligerent as soon as he exited his cab. DeAngelo asked plaintiff to pull forward into a nearby open parking space, but plaintiff refused. DeAngelo asked plaintiff for his registration, to which plaintiff responded by "flailing his arms and dancing around the street." Plaintiff screamed profanities until DeAngelo declared that he was under arrest for disorderly conduct. Defendants contend that plaintiff "struggled" and put up "some resistance" while DeAngelo attempted to conduct the arrest.

Plaintiff was charged with disorderly conduct and two traffic violations, double parking and failure to obey a lawful order of a police officer. Plaintiff went to trial in Utica City Court on September 29, 2009 on all three charges. Plaintiff was found guilty of both traffic violations and fined $280. Plaintiff was found not guilty of disorderly conduct.

B.   Non-Renewal and Suspension of Plaintiff's Taxicab License

At the police station after the arrest, DeAngelo allegedly stated that he was "going to do what he could" to have plaintiff's taxicab license revoked. DeAngelo made a copy of the taxicab license and stated that he would forward it to Captain Pawlinga of the Utica City Police Department, the individual in charge of taxicab services at that time.

On November 4, 2009, plaintiff filed a Notice of Claim regarding his claims related to the arrest with the Utica City Clerk, and submitted a copy to the City of Utica Office of the Corporation Counsel.

On December 31, 2009, plaintiff submitted his completed application for a 2010 taxicab license to the City of Utica Police Department as it was set to expire that day. Under Utica City Code sections 2-27-61 and 2-27-62, taxicab licenses are valid for one year periods beginning on

January 1 and ending on December 31.  Consequently, all licensed taxicab drivers must submit an application for a new license once per year.  As instructed by the form, plaintiff disclosed his September 2009 arrest, and his conviction for failure to obey a lawful order.  Plaintiff did not disclose his conviction for double-parking, but did disclose an additional prior conviction for speeding.

On February 3, 2010, defendant Michael Hauck denied plaintiff's application for a 2010 taxicab license.  Hauck cited plaintiff's September 2009 convictions for double-parking and failure to obey a lawful order while "on duty and operating a City Cab vehicle" as the reason for the denial.  Hauck indicated that plaintiff could reapply for a new taxicab license in July 2010, and that he could request a hearing on the denial within 30 days.  Despite this determination, however, the word "APPROVED" is clearly stamped in blue atop plaintiff's application and crossed out with what appears to be a black marker.  The strikethrough is initialed and dated January 6, but neither party identifies whom the initials belong to.  Plaintiff also claims that the non-renewal of his license was irregular in that: (1) his application for renewal had been granted every year since he first became licensed in 2006; (2) of all the renewal applications sent to the Utica City Police Department, only three (including plaintiff's) were denied; and (3) of the forty-two renewal applications from drivers employed with the Utica City Cab, plaintiff's was the only one denied.

Plaintiff requested a hearing on the denial of his license renewal application.  The appeal hearing was initially slated for February 9, 2010, but was cancelled and rescheduled twice.  Plaintiff filed an amended notice of claim including facts relating to the non-renewal on February 15, 2010.  Plaintiff eventually attended an appeal hearing represented by counsel on February 17,

2010.  Deputy Public Safety Commissioner Robert Palmieri issued a decision on the appeal on February 24, 2010, determining that plaintiff's license should be suspended for one week. Palmieri cited Hauck's findings of fact regarding plaintiff's September 2009 convictions along with the fact that plaintiff exited his vehicle and stood in the middle of the street "even though he knew he should have remained in his cab" as the bases for his determination.  Accordingly, plaintiff received his 2010 license following his one week suspension on March 3, 2010.

Because taxicab drivers in the City of Utica are permitted to operate while the status of their renewal applications are pending, plaintiff was without a valid taxicab license from February 3, 2010, until March 3, 2010.  Plaintiff claims that this deprivation caused him economic injury in the form of lost wages.

**III    DISCUSSION**

A.    <u>Summary Judgment Standard</u>

Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(a).  Substantive law determines which facts are material; that is, which facts might affect the outcome of the suit under the governing law.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 258 (1986). Irrelevant or unnecessary facts do not preclude summary judgment, even when they are in dispute.  *See id.*  The moving party bears the initial burden of establishing that there is no genuine issue of material fact to be decided.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). With respect to any issue on which the moving party does not bear the burden of proof, it may meet its burden by showing that there is an absence of evidence to support the nonmoving party's case.  *See id.* at 325.  Once the movant meets this initial burden, the nonmoving party must

-6-

demonstrate that there is a genuine unresolved issue for trial.  *See* Fed. R. Civ. P. 56(c), (e).

Although the trial court must resolve all ambiguities and draw all inferences in favor of that party against whom summary judgment is sought, *see Ramseur v. Chase Manhattan Bank*, 865 F.2d 460, 465 (2d Cir. 1989); *Eastway Constr. Corp. v. City of New York*, 762 F.2d 243, 249 (2d Cir. 1985), the motion will not be defeated by a non-movant who raises merely "metaphysical doubt" concerning the facts or who only offers conjecture or surmise. *See Delaware & H. R. Co. v. Consol. Rail Corp.*, 902 F.2d 174, 178 (2d Cir. 1990) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). Indeed, the nonmoving party's opposition may not rest on mere denials of the moving party's pleading, but "must set forth specific facts showing there is a genuine issue for trial." *See* Fed. R. Civ. P. 56(e).

B.     Claims Arising out of the Arrest

Plaintiff asserts various claims under federal and New York state law against officer DeAngelo arising from the August 16, 2009, arrest.  Defendants broadly invoke qualified immunity from suit on all federal claims related to the arrest, and specifically seek dismissal of plaintiff's Fourth Amendment, Fourteenth Amendment, and state law false imprisonment claims on substantive grounds.

1.     False Arrest

Plaintiff claims that DeAngelo arrested him without cause in violation of his Fourth Amendment right to be free of unreasonable search and seizure, and violating his state law rights under a theory of false imprisonment.  Under federal and New York law, "probable cause serves as a complete defense to the charges of false arrest." *See Miloslavsky v. AES Eng'g Soc'y*, 808 F. Supp. 351, 354 (S.D.N.Y. 1992) (quoting *Graebe v. Falcetta*, 726 F. Supp. 36, 38 (E.D.N.Y.

1989)); *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996). "Probable cause arises when the police reasonably believe that 'an offense has been or is being committed.' " *U.S. v. Scopo*, 19 F.3d 777, 781 (2d Cir. 1994) (quoting *U.S. v. Cruz*, 834 F.2d 47, 50 (2d Cir. 1987), *cert. denied*, 484 U.S. 1077 (1988)). In evaluating probable cause, courts consider the facts available to the officer at the time of the arrest. *Martinez v. Simonetti*, 202 F.3d 625, 634 (2d Cir. 2000); *Lowth v. Town of Cheektowaga*, 82 F.3d 563 569 (2d Cir. 1996); *see also Broughton v. New York*, 37 N.Y.2d 451, 458 (1975). Moreover, "[e]ven though such a violation may be reasonably characterized as a 'minor' offense, it is well-established that an officer's direct observation of even a minor traffic violation is sufficient probable cause to arrest the violator." *Smart v. City of New York*, 08-cv-2203 (HB), 2009 WL 862281 at *4 (S.D.N.Y. Apr. 1, 2009) (citing *Scopo*, 19 F.3d at 781–82); *see Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001).

In the present case, DeAngelo had probable cause to arrest plaintiff because he personally observed plaintiff violating New York's Vehicle and Traffic Law. Under New York Vehicle and Traffic Law section 1202, "[e]xcept when necessary to avoid conflict with other traffic, or when in compliance with law or the directions of a police officer or other official traffic-control device, no person shall . . . [s]top, stand or park a vehicle . . . [o]n the roadway side of any vehicle stopped, standing, or parked at the edge or curb of a street." N.Y. Veh. & Traf. Law § 1202 (McKinney 2011). By the facts agreed upon by both parties, DeAngelo observed plaintiff double parked. DeAngelo had no reason to believe nor does plaintiff contend that he was double parked because it was necessary to avoid conflict with other traffic, because it was in compliance with the law, or because it was at the direction of a police officer or other official or traffic-control device. Moreover, plaintiff was convicted of violating sections 1202 and 1102 of the New York

Vehicle and Traffic Law in the City Court of Utica.  Therefore, DeAngelo had probable cause to arrest plaintiff regardless of any factual disputes concerning DeAngelo's motivation for making the arrest.  *See Singer v. Fulton Cnty. Sheriff*, 63 F.3d 110, 120 (2d Cir. 1995).  As plaintiff has raised no triable issue of fact regarding the legality of his arrest under the Fourth Amendment and New York state law, defendants' motion for summary judgment on these claims as against officer DeAngelo must be granted.[1]

2.     Violation of Plaintiff's First Amendment Rights

Plaintiff also claims that DeAngelo violated plaintiff's federal constitutional rights by conducting the arrest in retaliation for plaintiff's exercise of his right to free speech.  Specifically, plaintiff asserts that at the moment he made a constitutionally protected comment, officer DeAngelo became "enraged" and arrested him.  Defendants do not specifically controvert this claim except by asserting that they are immune from suit on all of plaintiff's federal claims by virtue of qualified immunity.

"To prevail on this free speech claim, plaintiff must prove: (1) he has an interest protected by the First Amendment; (2) defendants' actions were motivated or substantially caused by his exercise of that right; and (3) defendants' actions effectively chilled the exercise of his First Amendment right." *Curley v. Vill. of Suffern*, 268 F.3d 65, 73 (2d Cir. 2001) (citing *Connell v. Signoracci*, 153 F.3d 74, 79 (2d Cir. 1998)).

---

[1] A generous reading of plaintiff's response to the instant motion reveals that he further challenges the impoundment of his taxicab following his arrest.  Because the arrest was supported by probable cause, DeAngelo and any other officer had authority to impound plaintiff's cab. *See Colorado v. Bertine*, 479 U.S. 367, 371–72 (1987); *Illinois v. Lafayette*, 462 U.S. 640, 643 (1983); *U.S. v. Perea*, 986 F.2d 633, 643–44 (2d Cir. 1993).  Therefore, this claim must be *sua sponte* dismissed.

Even assuming that plaintiff satisfied elements (1) and (3), DeAngelo did not violate plaintiff's First Amendment rights. If a police officer has probable cause to arrest a plaintiff, then the Court need not investigate the officer's motivation for that arrest. *Curley*, 268 F.3d at 73; *Singer*, 63 F.3d at 120; *Mozzochi v. Borden*, 959 F.2d 1174, 1179–80 (2d Cir. 1992). In other words, "if a police officer has probable cause to arrest a person, this will serve as a complete defense to any claim of First Amendment retaliation based on that arrest." *Morgan v. Cnty. of Nassau*, 720 F. Supp. 2d 229, 238 (E.D.N.Y. 2010). Because DeAngelo had probable cause to arrest plaintiff, as described above, plaintiff's claim for violation of his First Amendment rights must be *sua sponte* dismissed. *See Russo v. City of Bridgeport*, 479 F.3d 196, 203 (2d Cir. 2007).

3.      Violation of Plaintiff's Equal Protection Rights

Lastly, plaintiff claims that DeAngelo violated his Fourteenth Amendment guarantee to equal protection under the law. Although plaintiff's First Amendment claim fails as a matter of law because DeAngelo had probable cause to conduct the arrest, "the Equal Protection Clause still imposes restraint on impermissibly class-based discriminations" by barring the application of authority "with an evil eye and an unequal hand." *Scopo*, 19 F.3d at 786 (Newman, C.J., concurring).

Plaintiff acknowledges that he is not a member of a constitutionally protected class. Consequently, plaintiff's equal protection claim must rest on one of two theories: selective enforcement or a class of one. *See Cobb v. Pozzi*, 363 F.3d 89, 110 (2d Cir. 2004). "Both of these theories require plaintiffs to show that they were treated differently from other individuals 'similarly situated' to themselves." *TZ Manor, LLC v. Dianes*, __ F. Supp. 2d __, 2011 WL 4472133 at *20 (S.D.N.Y. Sept. 27, 2011) (citing *Analytical Diagnostic Labs, Inc. v. Kusel*, 626

F.3d 135, 140 (2d Cir. 2010); *Zahra v. Town of Southold*, 48 F.3d 674, 683 (2d Cir. 1995)).

Defendants are correct in arguing that plaintiff has not shown he was treated differently than others similarly situated to him.  In his response to the instant motion, plaintiff does not offer evidence demonstrating that other taxicabs were permitted to double-park on Varick Street, let alone that others were permitted do so with the blessing of the City of Utica Police Department. *See LaTrieste Rest. v. Vill. of Port Chester*, 188 F.3d 65, 69 (2d Cir. 1999) (Fourteenth Amendment claim based on selective enforcement properly dismissed because plaintiff could not show authorities knew similarly situated individuals were also violating zoning ordinance). Instead, plaintiff asserts he was subject to traffic regulation enforcement even though "Plaintiff has often observed that police vehicles frequently block traffic on Varick Street for personal business."  In New York, operators of police vehicles are given special privileges on the road, including the right to "[s]top, stand or park irrespective of the provisions" of the Vehicle and Traffic Law when engaged in an emergency operation. N.Y. Veh. & Traf. Law § 1104(b)(1); *see id.* § 114-b (defining "emergency operation" as including several that could appear similar to personal business).  Plaintiff, a taxicab driver, is in a statutory class of motorists distinct from the police officers to whom he claims to be "similarly situated."  Because plaintiff has not offered any evidence that he was treated differently than other taxicab drivers, defendants' motion must be granted on this claim.    4.   Excessive Force

Plaintiff claims that DeAngelo violated his Fourth and Fourteenth Amendment Rights by using an excessive amount of force in conducting the arrest.  On the same facts, plaintiff also asserts New York state law claims for battery, assault, and intentional infliction of emotional distress against DeAngelo. Defendants seek summary judgment on the federal claims based on

substantive law and qualified immunity, but they do not address the state law claims.

Plaintiff and defendants dispute whether the nature of the arrest constitutes a violation of plaintiff's substantive due process rights.  However, "*all* claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than under a 'substantive due process' approach." *Graham v. Connor*, 490 U.S. 386, 395 (1989).  Therefore,  "because the Fourth Amendment provides an explicit textual source of constitutional protection against this sort of physically intrusive governmental conduct," *id.*, defendants' motion must be granted as to any purported claim to the violation of substantive due process rights arising from plaintiff's arrest.

Plaintiff contends that the forceful nature of the arrest violates his Fourth Amendment right to be free from unreasonable search and seizure.  Defendants maintain that the force DeAngelo used was reasonable in light of the facts available to him at the arrest.

Courts have long recognized that police officers have the authority "to use some degree of physical coercion or threat thereof to effect" an arrest supported by probable cause.  *Graham*, 490 U.S. at 396 (citing *Terry v. Ohio*, 392 U.S. 1, 22–27 (1968)).  Evaluating the reasonableness of the force used "requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing government interests at stake." *Id.* (quoting *U.S. v. Place*, 462 U.S. 696, 703 (1983) (internal quotation marks omitted).  "In conducting that balancing," courts must consider "at least three factors: (1) the nature and severity of the crime leading to the arrest, (2) whether the suspect poses an immediate threat to the safety of the officer or others, and (3) whether the suspect was actively resisting arrest or

-12-

attempting to evade arrest by flight." *Tracy v. Freshwater*, 623 F.3d 90, 96 (2d Cir. 2010) (citing *Graham*, 490 U.S. at 396; *Jones v. Parmley*, 496 F.3d 46, 61 (2d Cir. 2006)).  These factors must be considered "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight," however, accounting "for the fact that police officers are forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id.* (internal citations and quotation marks omitted).  "Not every push or shove, even if it may later seem unnecessary . . . violates the Fourth Amendment." *Graham*, 490 U.S. at 397.

Defendants also assert qualified immunity from suit on this claim. "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate a clearly established statutory or constitutional rights of which a reasonable person would have known.' " *Pearsons v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  As such, qualified immunity can shield DeAngelo from suit on an excessive force claim if his conduct was objectively reasonable under the facts not in dispute.

Defendants submit evidence in support of their motion indicating that officer DeAngelo may have had subjective and objective justification to use some force on plaintiff.  At trial for the charges related to the arrest, DeAngelo recalled that plaintiff was verbally abusive, belligerent, and "unruly." Specifically, DeAngelo saw plaintiff "dancing around in the roadway" and "flailing his arms," conduct that drew a substantial crowd from the nearby bars.  Plaintiff allegedly "struggled" and put up "some resistence" when DeAngelo effectuated the arrest.

Plaintiff disputes the assertion that he was forceful or unruly towards officer DeAngelo at

-13-

any point during the arrest.  Plaintiff states that it was DeAngelo who become verbally abusive and unruly.  Plaintiff asserts that he "did not resist" the arrest, and that he even put his arms behind his back without being specifically told to do so.  Plaintiff further asserts that despite his submission to the arrest, DeAngelo lifted him up and slammed him on to the hood of a police vehicle.  Plaintiff claims that his arm and wrist were painfully twisted without warning as DeAngelo placed handcuffs on his wrists.  Finally, plaintiff states that  he felt DeAngelo tug the handcuffs by the chain, and that he observed DeAngelo make a menacing face as he over-tightened the handcuffs.  Plaintiff lists a series of physical and psychological injuries resulting from this encounter, including a contusion on his wrist that was still visible at his deposition eight months later.

Evaluating the facts in the light most favorable to the nonmoving party, defendants' motion on this claim must fail.  Crediting plaintiff's statements concerning the events leading to his arrest, he has raised a triable issue of fact as to whether officer DeAngelo used an excessive amount of force in conducting the arrest.  Consequently, defendant Deangelo's motion based on qualified immunity must be denied at this time, and defendants' motion to dismiss plaintiff's claim for excessive force must likewise be denied.

Defendants do not address plaintiff's state law claims in their motion for summary judgment.  However, "[a]ssault and battery claims under New York are analogous to excessive force claims under the Fourth Amendment," and so courts evaluate such claims "pursuant to the same standards."  *Dukes v. Troy Hous. Auth.*, 1:08-cv-479 (FJS/DRH), 2011 WL 1261317 at *7 (N.D.N.Y. Mar. 31, 2011).  Because plaintiff raises a triable issue of fact regarding the reasonableness of force used during the arrest, defendants' motion for summary judgment must

-14-

also be denied to the extent that it can be construed to apply to plaintiff's claims under New York law. *See id.* at *7–8.

C.   Claims Arising out of the Non-Renewal and Suspension of Plaintiff's Taxicab License

Plaintiff asserts that the retaliatory non-renewal of his taxicab license amounts to a violation of his Fourth, Fifth, and Fourteenth Amendment rights actionable under § 1983, and that the facts surrounding the non-renewal constitute a conspiracy between DeAngelo, Hauck, and the City of Utica under § 1983 to deprive the same.  Defendants contend that plaintiff has put forward no evidence in support of his conspiracy claim, that plaintiff's procedural due process claim should fail because plaintiff has not exhausted administrative or state court remedies, and that qualified immunity otherwise shields defendants DeAngelo and Hauck from suit.  Defendants do not specifically address plaintiff's Fourth Amendment claim regarding the non-renewal and suspension of his taxicab license.

1.   Violation of Plaintiff's Fourth Amendment Rights

The Fourth Amendment prohibits unreasonable searches and seizures.  A seizure, for purposes of the Fourth Amendment, "occurs when there is some meaningful interference with an individual's *possessory* interests in that property." *Sodal v. Cook Cnty., Illinois*, 506 U.S. 56, 61 (1992) (internal quotation marks omitted and emphasis added). The privilege of driving a taxicab in the City of Utica does not implicate a *possessory* interest, but the privilege of physically holding a taxicab license does.  Plaintiff does not allege that his possessory interest in his 2009 taxicab license was interfered with, nor can he establish that he had a possessory interest in his 2010 taxicab license until after the suspension hearing.  Furthermore, even if plaintiff could articulate a meaningful interference with a future possessory interest in his 2010 taxicab license,

-15-

the uncontroverted facts establish that this interference was by no means unreasonable.  Plaintiff was convicted of two traffic violations while operating his taxicab, facts which Hauck and Palmieri cited in their adverse decisions.  Consequently, plaintiff's Fourth Amendment claim relating to the non-renewal and suspension of his taxicab license must be *sua sponte* dismissed. *Cf. Fox v. Van Oosterum*, 176 F.3d 342, 349–51 (6th Cir. 1999) (refusal to return plaintiff's driver's license, obtained during an inventory search of a vehicle, deemed reasonable under the Fourth Amendment).

2.      Procedural Due Process

Plaintiff claims that the non-renewal and suspension of his 2010 taxicab license violated his right to procedural due process.  "To succeed on a claim of procedural due process deprivation under the Fourteenth Amendment—that is, a lack of adequate notice and a meaningful opportunity to be heard—a plaintiff must first establish that state action deprived him of a protected property interest."  *Spinelli v. City of New York*, 579 F.3d 160, 168 (2d Cir. 2009).  To establish a protected property interest, a plaintiff must show "a legitimate claim of entitlement to it" grounded in the law, not "an abstract need or desire for it" or "a unilateral expectation of it." *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972).  Due process does not protect a property interest in a *future* license when the issuer has broad discretion in issuing that future license.  *Sanitation and Recycling Indus. Inc. v. City of New York*, 107 F.3d 985, 995 (2d Cir. 1997).

Plaintiff did not have a protected property interest in his 2010 license before March 3, 2010, because the City of Utica Commissioner of Public Safety had broad statutory discretion to accept or reject plaintiff's taxicab license renewal application.  Under Utica City Code section 2-

-16-

27-65, an applicant for a renewal taxicab license must demonstrate *"to the satisfaction of the commissioner* that the applicant is qualified to assume the duties and obligations" associated with operating a taxicab in the City of Utica.  Utica City Code § 2-27-65 (emphasis added). Applicants are required to present good moral character affidavits, review of which necessarily involves substantial discretion. *Id.* § 2-27-82(a)(5).  At no time could plaintiff have had more than a unilateral expectation that his application for renewal would be granted or that his appeal would be successful.  Therefore, because the City of Utica taxicab licensing scheme is discretionary as a matter of law, plaintiff has failed to state a procedural due process claim.  *Sanitation & Recycling Indus. Inc.*, 107 F.3d at 995; *Mordukhaev v. Daus*, 09-cv-5149 (SHS)(RLE), 2010 WL 3792044 at *3–5 (S.D.N.Y. Aug. 19, 2010).

       Plaintiff offers evidence showing that "APPROVED" was stamped on his application and then crossed out with a black marker.  Although the date written next to the cross-out is January 6, plaintiff does not state that he saw the application until after he received Hauck's non-renewal decision.  Plaintiff does not state that this marking in any way caused him to believe that his renewal application was actually approved when it was in fact still pending.  Furthermore, there is no evidence in the record showing that the "APPROVED" stamp removed Hauck's discretionary authority over plaintiff's renewal application.  Therefore, the stamp and cross-out have no bearing on the determination of plaintiff's due process claim..

       Although plaintiff did not make the argument on these motion papers, the Court notes that the record contains evidence indicating that taxicab drivers in the City of Utica are permitted to operate their vehicles provisionally in anticipation of the approval of their renewal applications. All taxicab licenses are deemed "issued as of January 1" of a given year, meaning that a driver

-17-

whose application is approved on January 15 is deemed to been a licensed taxicab driver for two weeks before that date.  *See* Utica City Code § 2-27-61.  The fact that plaintiff was operating his taxicab provisionally in the month of January in anticipation of being granted a 2010 license did not in any way affect Hauck's broad discretion to accept or reject plaintiff's renewal application.  Consequently, the interim authority to operate a taxicab created no more than a unilateral expectation that plaintiff's renewal application would be granted.  Because plaintiff has offered no facts to substantiate the claim that he was deprived of a property interest when Hauck declined to renew his taxicab license, defendants' motion for summary judgment on the procedural due process claim must be granted.

3.      Substantive Due Process

        Plaintiff's response to the instant motion clarifies that he seeks recovery for the non-renewal and subsequent suspension of his taxicab license by virtue of substantive due process under the Fourteenth Amendment.  However, because these assertions rely on the same facts plaintiff uses to invoke his right to procedural due process, plaintiff's substantive due process claim regarding his taxicab license must be dismissed.  *Johnson v. Gummerson*, 198 F.3d 233, 1999 WL 822523 at *2 (2d Cir. 1999) (table decision) (upholding dismissal of substantive due process claim where the same facts implicated an unsuccessful procedural due process claim).

4.      Equal Protection

        Further, plaintiff claims that the non-renewal and suspension of his license violated equal protection.  As above, plaintiff acknowledges that he does not belong to a protected class, and so plaintiff must establish that he was treated differently than others similarly situated to him.  *See TZ Manor*, __ F. Supp. 2d at __, 2011 WL 4472133 at *20 (citing *Analytical Diagnostic Labs,*

626 F.3d at 140; *Zahra*, 48 F.3d at 683).  Plaintiff alleges that (1) his application for renewal had been granted every year since he became licensed in 2006, (2) all but three applications sent to the Utica City Police Department were approved without investigation, and that (3) of the 42 drivers employed with the Utica City Cab, his was the only renewal application denied.

Plaintiff has not proffered enough evidence to raise more than a "metaphysical doubt" as to whether he was treated differently than other taxicab license renewal applicants.  Hauck and Palmieri cited plaintiff's convictions for traffic violations he committed while on-duty as the basis for differential treatment.  Plaintiff does not claim that other applicants who committed traffic violations while on duty obtained a 2010 license without issue.  Plaintiff does not even suggest that similarly situated drivers have obtained licenses in the past without issue.  Because plaintiff has not offered any evidence regarding other renewal applicants who were convicted of traffic violations to show that he was treated differently than those similarly situated to him, defendants' motion must be granted on this claim.

5.    Conspiracy

Lastly, plaintiff's response to the instant motion clarifies that he is seeking to assert a conspiracy claim under § 1983 against DeAngelo, Hauck, and the City of Utica. "To prove a § 1983 conspiracy, a plaintiff must show: (1) an agreement between two or more state actors . . . ; (2) to act in concert to inflict an unconstitutional injury, and (3) an overt act done in furtherance of that goal causing damages." *Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir. 1999).  Plaintiff asserts that DeAngelo stated that he would do anything he could to have plaintiff's taxicab license revoked and that he would be meeting with Captain Pawlinga after the arrest to discuss the status of plaintiff's license.  Plaintiff offers evidence that an "APPROVED" stamp appears on his

-19-

renewal application scribbled out in black marker, which he characterizes as the "smoking gun" of the conspiratorial arrangement. As detailed above, however, plaintiff has asserted *no constitutional injury* arising from the non-renewal and suspension of his taxicab license. Therefore, defendants' motion for summary judgment must be granted as to the conspiracy claim. *Toussie v. Cnty. of Suffolk*, __ F. Supp. 2d __, 2011 WL 3349357 at *18 (E.D.N.Y. 2011). As this claim and the due process claims are the only ones asserted against defendant Hauck, he also must be dismissed as a party to this action.

D.   Claims Against the City of Utica

Plaintiff's complaint seeks relief from the City of Utica on the basis of *respondeat superior*, and a generous reading of plaintiff's papers indicate that he also claims that the City of Utica caused his constitutional injuries. The instant motion does not address whether the City of Utica may be held liable for plaintiff's claims. In *Monell v. Department of Social Services*, 436 U.S. 658 (1976), the United States Supreme Court explicitly held that municipal entities are *not* subject to liability under a theory of *respondeat superior*. *Id.* at 694 ("We conclude . . . that a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents."). However, under *Monell*, a municipality may be held liable under § 1983 for the execution of an unconstitutional policy or custom. *Id.* at 690–95. Plaintiff does not question any official policy or custom in his complaint or response papers. Therefore, as plaintiff has stated no claim against the City of Utica, it must be *sua sponte* dismissed as a party to this action. *Harvey v. City of Utica*, 96-cv-831 (RSP/DS), 1997 WL 67785 at *4 (N.D.N.Y. Feb. 13, 1997).

IV.   **CONCLUSION**

Based on the foregoing, it is hereby

-20-

ORDERED that the motion by defendants for summary judgment dismissing the complaint is DENIED as to the excessive force and New York state law assault and battery claims against defendant George DeAngelo in his individual capacity, and

ORDERED that the motion by defendants for summary judgment dismissing the complaint is otherwise GRANTED, and

ORDERED that the complaint is *sua sponte* DISMISSED as to all other purported claims.

IT IS SO ORDERED.

Date:   December 28, 2011

_____
Honorable Norman A. Mordue
U.S. District Judge